**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Roderick Francis BAILEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 28, 2009.

Filed Dec. 1, 2009.

Suzanne M. Swan and Jessica L. Herndon, Public Defenders, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: KLEIN, J., McEWEN, P.J.E., and HUDOCK, J.*

* Retired Senior Judge specially assigned to the Superior Court.

OPINION BY KLEIN, J.:

¶ 1 Roderick Francis Bailey appeals from the judgment of sentence imposed on his convictions of various weapons charges. The trial judge, the Honorable Anthony M. Mariani, found that the consent to search was not voluntary. However, he further found that the car would have been towed and an inventory search conducted and therefore discovery of the gun in the car was inevitable. We agree and affirm. It is true that the car was not in a spot causing a hazard or blocking traffic and it was not proper to tow and inventory the car under traditional common law principles. However, the statute has a separate section allowing towing and inventory when a person is arrested and is being taken to an "issuing authority."[1] Since there is another section dealing with towing when the vehicle is creating a hazard, the legislative intent should be interpreted to allowing towing after an arrest even if there is no hazard.

¶ 2 A full discussion follows.

**Facts and Procedure**

¶ 3 Bailey claims the suppression court erred in failing to suppress the physical evidence, a 9 mm semi-automatic handgun, found in the center console of his car. Bailey had been legally stopped by the police who were seeking to enforce an outstanding arrest warrant against him for simple assault. The suppression court ruled that Bailey did not voluntarily consent to the search of his car. However, the court ruled that because the car would have been towed pursuant to Bailey's arrest, and therefore subject to an inventory search, the inevitable discovery of the gun did not require suppression. After careful review,[2] we affirm.

¶ 4 On December 26, 2005, acting on a tip, the police went looking for Bailey, who was wanted on an arrest warrant for simple assault. As they were driving to the address provided by the anonymous tipster, the police officer recognized Bailey driving toward him on Friendship Avenue in McKees Rocks. The officer signaled Bailey to pull over and he did. Bailey was informed he was being arrested pursuant to a warrant for simple assault and Bailey was handcuffed. Bailey's passenger was asked to exit the car and told to stand at the rear, passenger side of the car. After being handcuffed, one of the backup officers claimed an informant told him that Bailey was known to carry a gun. The arresting officer asked Bailey if they could search his car[3] and Bailey agreed. Bailey was not read his *Miranda*[4] rights until he was taken to the police station. The 9 mm handgun in question was found in the center console. Neither Bailey nor his passenger claimed to have any knowledge of the gun.

¶ 5 Prior to trial, Bailey filed a motion to suppress evidence claiming his permission to search the car was not given freely and that there were no other reasons to allow the search. The Commonwealth argued

1. 75 Pa.C.S. § 3352(c)(3).

2. In reviewing a challenge to the denial of a motion to suppress, we are to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted in view of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 504–05 (1997).

3. The police had confirmed that the White Acura was registered to Bailey.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that the permission to search was proper but in any event, the gun would have been inevitably discovered because the car was subject to be towed and when a car is towed it is the policy of the police department to conduct an inventory search. In response, Bailey argued that the Commonwealth had not shown that it had a policy in place regarding towing and that the search was clearly not an inventory search.

¶ 6 Judge Mariani as suppression judge agreed with Bailey that the permission to search the car was coerced and was therefore invalid. The suppression court also agreed that the search itself was not an inventory search. However, given that the police were operating, at that time, under the belief they had permission to search, there was no reason for the search to be an inventory search. However, the suppression court also ruled that the Commonwealth had demonstrated that even absent the "permissive search," the car was properly subject to be impounded and towed and that it was the custom of the police to perform a routine inventory search which would have inevitably led to the discovery of the gun in the center console.

¶ 7 We agree with Judge Mariani in all regards.

**Discussion**

¶ 8 Although the issues of consent and the nature of the search were raised by Bailey, the issues are not really before us as the Commonwealth does not challenge the suppression court's determination that the search was not the result of proper consent and that the search was conducted with the idea of looking for evidence, not inventorying the contents of the car. Therefore, the only issue before us is whether the gun would have been discovered absent the invalid search.

¶ 9 The inevitable discovery doctrine provides:

[E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence....[I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.

If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. Gonzalez,* 2009 PA Super 137, filed July 17, 2009, ¶¶ 29, 30, 979 A.2d 879 (citations omitted).

¶ 10 In this matter, the Commonwealth argues and the suppression court agrees that because Bailey was arrested while in control of his vehicle, the police were legally permitted to tow the car, that they would have towed the car, and that pursuant to towing the car, they would have conducted an inventory of the car which would have included looking in obvious storage places such as the glove compartment and the center console. Because they would have legally opened the console during a proper inventory search, the gun would have been found.

¶ 11 The right for the police to tow a car is derived from 75 Pa.C.S. § 3352. Specifically relevant to this case is section 3352(c)(3):

(c) **Removal to garage or place of safety.** Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon the high-

way under any of the following circumstances:

> (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

75 Pa.C.S. § 3352(c)(3).

¶ 12 Interestingly, despite the fact that this statute has been on the books since 1976, we have found only one that case has commented on section (c)(3), *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa.Super.2000). In that case, the police impounding the car was improper because the suspect was not operating or in control of his car at the time of arrest. Rather, the car was simply legally parked on the side of the road. In *dicta, Hennigan* comments that the ability to impound a car is derived from the traditional caretaking function of the police which has allowed police to tow cars, prior to statute, in situations where the cars presented some manner of hazard to the public or where the car might impact on the movement of traffic.

¶ 13 We note, however, that the statute separately accounts for the traditional care-taking functions where the police have always been allowed to tow a vehicle. For example, section (c)(5) addresses abandoned vehicles. Section (c)(2) addresses situations where the person or persons in charge of the vehicle are incapable of providing custody or removal of the vehicle. Section (c)(4) directs attention to the traditional parking situations where the vehicle might pose a hazard or impede the orderly flow of traffic.

¶ 14 Therefore, it appears that the legislature intended these situations to be viewed distinctly and separately. By stating that the police could legally tow a vehicle under *any* of the circumstances, the legislature was allowing the police to separate certain situations from the traditional care-taking role of the police. If the ability to tow the vehicle when the driver is arrested in a circumstance under section (c)(3) is nonetheless dependant upon the traditional common law reasons to tow, then section (c)(3) is essentially superfluous language because a car that impedes traffic or poses some other safety hazard can always be towed, whether the driver has been arrested or not. In interpreting a statute, we are to give effect to all the language of the statute and we may not render language superfluous or assume language to be mere surplusage. *See* 1 Pa.C.S. §§ 1921, 1922; *Commonwealth v. Frye*, 853 A.2d 1062, 1066 (Pa.Super.2004).

¶ 15 Because the police would have been able to tow Bailey's car pursuant to his arrest and because the police conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places such as the center console, we must agree that the gun would have inevitably been discovered absent police error or misconduct. Therefore, the record supports the suppression court determination that evidence was not subject to suppression. *Hawkins, supra.*

¶ 16 Judgment of sentence affirmed.

¶ 17 McEWEN, P.J.E., files a Concurring Statement.

## CONCURRING STATEMENT BY McEWEN, P.J.E.:

¶ 1 The author of the Majority Opinion has, in his usual fashion, perceptively analyzed the issues presented in this appeal, and while I agree with the decision of the Majority to affirm the decision of the trial court to deny appellant's motion to suppress, I write separately to state that my decision to join is based upon the fact that the arresting officer testified, without con-

tradiction or rebuttal, that appellant's car "would have been towed" and "an inventory search of the vehicle" would have been performed. *See:* N.T., November 21, 2006. Thus, despite the fact that there was no written policy produced by the Commonwealth to explain the parameters of this towing policy, the learned Judge Anthony Mariani, who presided over the suppression hearing, had, in my view, an ample basis for refusing to suppress the recovery of the subject weapon under the doctrine of inevitable discovery.