J-S35022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTIS CLAY PHILLIPS, | |
| Appellant | No. 2168 EDA 2014 |

Appeal from the Judgment of Sentence June 20, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001893-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 21, 2016**

Appellant, Curtis Clay Phillips, appeals from the judgment of sentence of two to eight years' imprisonment, followed by three years' probation, imposed after he was convicted of possession with intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and two traffic violations.  For the following reasons, we conclude that Appellant's issues are meritless.  However, we *sua sponte* recognize that he received an illegal, mandatory minimum sentence under 18 Pa.C.S. § 7508.  Accordingly, we vacate his judgment of sentence and remand for resentencing.

The facts of this case can be briefly summarized as follows.  On March 6, 2013, Trooper Michael C. Kalinchock stopped Appellant's vehicle on the side of an interstate highway, after observing Appellant commit traffic

violations, including following another vehicle too closely and failing to use his turn signal. Upon running Appellant's license plate number through the National Crime Information Center (NCIC), the trooper discovered that the vehicle was registered to Appellant, Appellant had an outstanding warrant for his arrest for a firearms charge, and Appellant was considered armed and dangerous. Accordingly, Trooper Kalinchock called for backup, and after other officers arrived, he removed Appellant and another individual from Appellant's car.

After arresting Appellant on the outstanding warrant, and discovering that his cohort did not have a valid driver's license, Trooper Kalinchock determined that Appellant's vehicle would have to be removed from the side of the highway and towed to a secure location, in accordance with the written policies of the Pennsylvania State Police. Those policies also required Trooper Kalinchock to perform an inventory search of the car before the tow truck removed it. Accordingly, Trooper Kalinchock began an inventory search, during which he opened the center console located between the driver and passenger seats. In plain view inside that console, Trooper Kalinchock discovered approximately 190 packets of heroin.

Based on these facts, Appellant was charged with the above-stated offenses. Prior to trial, he filed a motion to suppress the drugs recovered from his vehicle, and a hearing was conducted on September 6, 2013. On November 27, 2013, the trial court denied Appellant's motion to suppress. His case proceeded to a jury trial, which was conducted on December 4-5,

2013. At the close thereof, the jury found Appellant guilty of PWID, 35 P.S. § 780-113(a)(30); possession of a controlled substance, 35 P.S. § 780-113(a)(16); and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). On February 14, 2014, just prior to Appellant's sentence being imposed, the court also found him guilty of the summary traffic offenses of following too closely, 75 Pa.C.S. § 3310, and turning movements and required signals, 75 Pa.C.S. § 3334. After convicting Appellant of those offenses, the court imposed a sentence of two to eight years' incarceration, followed by three years' probation, for Appellant's PWID offense. No further penalty was imposed. Finally, at the close of the sentencing proceeding, Appellant's counsel sought, and was granted, permission to withdraw from representing Appellant.

At this point, the procedural history of Appellant's case becomes more complex. On February 20, 2014, Appellant - who was at that point proceeding *pro se* - filed a "Motion to Reconsider Sentence." On March 6, 2014, new counsel entered his appearance on Appellant's behalf. On March 31, 2014, the Honorable Edward G. Smith, the judge who presided over Appellant's trial and sentencing, was appointed to the federal bench. **See** Trial Court Opinion (TCO), 7/16/14, at 1 (unnumbered) (opinion drafted by the President Judge of Northhampton County who was assigned this case following Judge Smith's departure). Presumably because of Judge Smith's departure, the court did not rule on Appellant's post-sentence motion. Thus, that motion should have been denied by operation of law 120 days later, or

on Friday, June 20, 2014. *See* Pa.R.Crim.P. 720(B)(3)(a). However, as the Commonwealth concedes, *see* Commonwealth's Brief at 3 n.7, a breakdown in the operation of the court occurred and the Northampton County Clerk of Courts never entered an order denying Appellant's post-sentence motion by operation of law, as it was required to do under Pa.R.Crim.P. 720(B)(3)(c).

Despite that an order ruling on Appellant's post-sentence motion was never filed, Appellant's counsel filed a notice of appeal on July 10, 2014. That notice of appeal was filed within 30 days from the date on which the order denying Appellant's post-sentence motion should have been entered by the clerk of courts. Consequently, we conclude that Appellant's notice of appeal was timely filed.

The trial court, however, deemed Appellant's notice of appeal untimely. *See* TCO at 1. The court's decision was premised on its erroneous belief that Appellant did not file a post-sentence motion. *See id.* The court's error in this regard was likely caused by the clerk of court's mistake in not filing an order denying the post-sentence motion by operation of law. Because the trial court concluded that Appellant's notice of appeal was untimely filed, it did not direct him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Moreover, while the court issued a Rule 1925(a) opinion, it did not address any issues, or even set forth the facts and procedural history of Appellant's case. Instead, the court simply discussed its conclusion that Appellant's appeal was untimely filed.

During the pendency of Appellant's appeal, he had two different attorneys enter their appearance on his behalf, and both sought permission to withdraw, which we granted by per curiam orders. Appellant also filed a motion seeking to proceed *pro se*, and we remanded for the court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to ascertain if Appellant's waiver of his right to counsel was knowing, intelligent, and voluntary. After conducting a **Grazier** hearing, the court permitted Appellant to proceed *pro se*.

On January 22, 2016, Appellant filed a 68-page, handwritten brief that fails to adhere to the Pennsylvania Rules of Appellate Procedure. Namely, his brief does not contain the following sections: Statement of Jurisdiction (Pa.R.A.P. 2114), Order or Other Determination in Question (Pa.R.A.P. 2115), Statement of Questions Involved (Pa.R.A.P. 2116), or Summary of Argument (Pa.R.A.P. 2118). Appellant's issues are interspersed throughout his brief, and include numerous subsidiary claims that are not included in, or even suggested by, the statement of the questions he sets forth. It is an understatement to say that it is unclear from a cursory review of Appellant's brief what (or how many) issues he is seeking to raise.

On February 19, 2016, the Commonwealth filed a motion to quash Appellant's brief based on the fact that he violated Pa.R.A.P. 2135, which directs that a principal brief "shall not exceed 14,000 words…." Pa.R.A.P. 2135(a)(1). By utilizating an approximation method discussed by this Court in **Commonwealth v. Spuck**, 86 A.3d 870, 873 (Pa. Super. 2014), the

Commonwealth estimated that Appellant's 68-page brief contains "approximately 20,808 words." Commonwealth's Motion to Quash, 2/19/16, at 2 (unnumbered). Accordingly, the Commonwealth argued that this Court should "quash Appellant's brief in its entirety or the portion of Appellant's brief that goes beyond the limitation." **Id.** at 2-3 (unnumbered; citation omitted).

On March 14, 2016, Appellant filed a typed reply brief that set forth the sections omitted from his principal brief, as discussed *supra.* Therein, he set forth the following seven issues for our review, which we reproduce verbatim:

> 1.) Was Northampton County Adult Probation and Parole Officer Timothy D. Werkheiser without jurisdiction required to petition the court for a violation of parole conditions? Was the court without jurisdiction required to find a violation thereof where it appears that the parole ordered was specifically ordered, by statute, to be without supervision?
>
> 2.) Was the March 6th, 2013 traffic stop, search and seizure of my vehicle improper under the circumstances? Did the court err in denying my omnibus pre-trial motion to suppress the evidence seized as a result of the search?
>
> 3.) Has the court violated my right to due process of law by withholding evidence? Altering evidence? Refusing to provide me with a certified copy of the court record? Causing me to stand trial on charges stemming directly from an alleged violation of parole prior to finding me guilty of violation?
>
> 4.) Did the court err when it failed to hold a hearing in accordance with Comm. V. Carroll prior to the imposition of sentence upon my request and, as a result, was my right to due process of law violated?
>
> 5.) Did the court err in the deemed denial of my post-sentence motions?

6.) Has the court violated my right to a fair and impartial trial in a cumulative theory sense?

7.) Did the court abuse its discretion in application of an eight (8) year maximum sentence of confinement while, at the same time, invoking the mandatory minimum of two (2) years? In sentencing an additional three (3) year term of "special" probation upon parole?

Appellant's Reply Brief at 1-2 (unnumbered).

Upon reviewing Appellant's principal brief and reply brief, we chastise him not only for being excessively wordy and for failing to adhere to the Rules of Appellate Procedure, but also for presenting extremely confusing arguments (in difficult to read handwriting) that contain numerous claims and sub-claims not set forth, nor even suggested by, the above-stated issues. That being said, however, we decline to grant the Commonwealth's motion to quash Appellant's brief in its entirety, or to quash the part of his brief that exceeds the page limitation.[1] Rather, we will attempt to address those claims of Appellant's that we can readily understand, and which are sufficiently developed to permit our meaningful review. To the extent that we exclude certain claims that have been lost within Appellant's excessively lengthy and confusing brief, the fault is Appellant's, and we consider those claims waived for our review.

In Appellant's first issue, he challenges the 'jurisdiction' of a parole officer to seek revocation of his parole based on a technical violation in a

---

[1] Accordingly, the Commonwealth's motion to quash is denied.

case *unrelated to the present matter*. **See** Appellant's Brief at 11-17. Appellant reiterates this argument in his second and third issues, as well. **See id.** at 17-19; 28. Appellant acknowledges that these claims are "technically[] a challenge to the legality of [his] preceding sentence." **Id.** at 12. Because this is not an appeal from the judgment of sentence in that case, we cannot entertain Appellant's challenge to that parole revocation or sentence herein. Accordingly, we will not address any of the arguments presented in his first issue, or his reiteration of those claims in other portions of his brief.

In Appellant's second issue, he challenges the suppression court's denial of his motion to suppress. Our standard of review for denial of a suppression motion is as follows:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

**Commonwealth v. Hoopes**, 722 A.2d 172, 174-75 (Pa. Super. 1998).

First, he attacks the credibility of the officer who stopped his vehicle, Trooper Kalinchock, claiming that the trooper's testimony was unbelievable. **See** Appellant's Brief at 20-21. In particular, Appellant asserts that Trooper Kalinchock's testimony that Appellant failed to use his turn signal was belied by a video shown at the suppression hearing demonstrating that his turn-signal was blinking when he made the "turn in question." **Id.** at 22.

At the suppression hearing, the defense played a video from the police cruiser's dashboard camera, which showed that Appellant's turn-signal was blinking. N.T. Suppression Hearing, 9/6/13, at 39. Trooper Kalinchock explained, however, that Appellant's signal "was blinking at that point but when [the car] moved from the single lane into the left [turning] lane it did not use its directional signal until it approached 78 and then put its directional on." *Id.* The suppression court found that "Trooper Kalinchock's testimony was consistent with … the video…." Suppression Court Opinion (SCO), 11/27/13, at 7. The court explained:

> The video from the dashboard camera did not clearly show whether the operator was using the left-turn signal as the car moved into the left turn lane on Morgan Hill Road. Trooper Kalinchock testified that not everything he saw was visible on the video, because the dashboard camera was stationary, the video was not very clear, and there was some distance between the patrol car and [Appellant's] car. *See* N.T. Suppr. Hrg. At 43-44. The video did clearly show that after the car made the left turn from Morgan Hill Road onto the access ramp, the car's left-turn signal was blinking. However, this evidence proved only that [Appellant] activated the signal sometime after he made the left turn. It did not prove that [Appellant] had activated the signal at or before the moment he made the left turn onto the access ramp. Thus, the [c]ourt found that the video was inconclusive and did not contradict Trooper Kalinchock's testimony.

*Id.* at 8. The record supports the suppression court's factual findings, and we may "not substitute our credibility determinations for that of the suppression court." *Commonwealth v. Queen*, 639 A.2d 443, 445 (Pa. 1994). Therefore, Appellant's first attack on the suppression court's ruling is meritless.

Appellant also contends that the evidence recovered from his vehicle should have been suppressed because Trooper Kalinchock conducted an illegal inventory search. This Court has summarized the law regarding inventory searches, as follows:

> Inventory searches are a well-defined exception to the search warrant requirement. ***Colorado v. Bertine***, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); ***Commonwealth v. Nace***, 524 Pa. 323, 327, 571 A.2d 1389, 1391 (1990), *cert. denied,* 498 U.S. 966, 111 S.Ct. 426, 112 L.Ed.2d 411 (1990). "The purpose of an inventory search is not to uncover criminal evidence. Rather, it is designed to safeguard seized items in order to benefit both the police and the defendant." ***Commonwealth v. Woody***, 451 Pa. Super. 324, 679 A.2d 817, 819 (1996). ***See also Commonwealth v. Brandt***, 244 Pa. Super. 154, 366 A.2d 1238, 1241 (1976) (*en banc*). Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned. ***See South Dakota v. Opperman***, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
>
> A warrantless inventory search of an automobile is different from a warrantless investigatory search of the same. An inventory search of an automobile is permitted where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. ***Id.*** at 368–372, 96 S.Ct. 3092. A warrantless investigatory search of an automobile requires both a showing of probable cause to search and exigent circumstances. ***See Commonwealth v. Luv***, 557 Pa. 570, 735 A.2d 87 (1999); ***Commonwealth v. White***, 543 Pa. 45, 669 A.2d 896 (1995).
>
> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.,* have lawful custody of the

automobile. ***Opperman***, 428 U.S. at 368, 96 S.Ct. 3092. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. ***Id.*** Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety. ***Id.*** at 368–369, 376 n. 10, 96 S.Ct. 3092.

The second inquiry is whether the police have conducted a reasonable inventory search. ***Id.*** at 370, 96 S.Ct. 3092. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation. ***See Bertine***, 479 U.S. at 374, 107 S.Ct. 738 ("reasonable police regulations relating to inventory procedures of automobiles administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure"). ***Compare Florida v. Wells***, 495 U.S. 1, 4–5, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (where police had no standard procedure with respect to the opening of closed containers found during inventory searches, marijuana found in a closed suitcase was properly suppressed). Said another way, the inventory search must be pursuant to reasonable police procedures, and conducted in good faith and not as a substitute for a warrantless investigatory search.

***Commonwealth v. Hennigan***, 753 A.2d 245, 254-55 (Pa. Super. 2000).

Here, Appellant first avers that his vehicle was not lawfully impounded, pointing out that the Commonwealth offered no evidence that it was necessary to tow his car, such as proof that it was illegally parked. Appellant also avers that Trooper Kalinchock was required to "grant [Appellant] the opportunity, under the circumstances, to call someone to remove [his] vehicle for [him]" before having it towed. Appellant's Brief at 23. In support, Appellant cites ***Commonwealth v. Germann***, 621 A.2d 589 (Pa. Super. 1993).

In rejecting these arguments, the suppression court declared:

> By statute, Pennsylvania law enforcement officials have authority to impound a car when the driver is taken into custody. *See* 75 Pa.C.S.A. § 3352(c)(3).
>
> **§ 3352. Removal of vehicle by or at direction of police.**
>
> …
>
> **(c) Removal to garage or place of safety.--**Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:
>
> …
>
> (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.
>
> *Id.* Section 3352 is based on the need to remove the car from the highway, where it could pose a safety hazard. *See* [] *Hennigan*, 753 A.2d [at] 258-59….
>
> [T]he phrase "control of the vehicle" reasonably means control of a vehicle on a highway where the vehicle poses a possible public safety concern or traffic control concern if left unattended. … If a defendant is driving alone and the police stop him in his car on a highway and arrest him, the presence of the car on a highway usually poses a public safety concern if left there unattended. Thus, … subsection (c)(3) covers situations where a public safety concern or traffic hazard exists, and where the arrestee is either "driving" or otherwise in "control" of the vehicle at the time of arrest. When interpreted in this manner, § 3352(c)(3) authorizes police to impound a vehicle in circumstances that involve the community care-taking functions of the police, such as public safety concerns and traffic control concerns, and, thus, comports with constitutional standards for impoundment

*Id.* (police did not obtain lawful custody of vehicle under section 3352(c)(3) for purposes of determining validity of inventory search; defendant's car was legally parked on public street, he was not driving his vehicle, he was not near the vehicle at the time of his arrest, his vehicle was not shown to have a nexus to the crime for which he was being arrested, no items of value were in plain view in the vehicle, and the vehicle was not shown to cause any public safety concern or traffic control concern).

When Trooper Kalinchock stopped [Appellant's] car, it was on I-78, an interstate highway. Thus, leaving the car there unattended would have posed a public safety hazard. Trooper Kalinchock determined that [Appellant] was the driver. Thus, [Appellant] was "driving or in control of the vehicle." 75 Pa.C.S.A. § 3352(c)(3). After Trooper Kalinchock stopped [Appellant's] car, he learned that there was a warrant for [Appellant's] arrest, and on the basis of that warrant, he took [Appellant] into custody. Thus, [Appellant] was "arrested." *Id.* The warrant directed that [Appellant] be "held in County Jail until the Court is opened for business, at which time [Appellant] shall be promptly conveyed and delivered into the custody of the Court." Suppr. Hrg., Ex. C-1. Thus, [Appellant] was being held "for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay." 75 Pa.C.S.A. § 3352(c)(3). [Appellant's] passenger did not have a valid driver's license and could not drive the car away from the scene. Based on these circumstances, Trooper Kalinchock lawfully impounded Appellant's car under 75 Pa.C.S.A. § 3352(c)(3).

[Appellant] argues that police did not lawfully take custody of his car, because, he asserts, Trooper Kalinchock was required to offer him the opportunity to make his own arrangements to have his car towed rather than impounding the car pursuant to 75 Pa.C.S.A. § 3352(c)(3). We disagree.

The only authority [Appellant] cites for such a requirement is … *Germann*, 621 A.2d 589 …. However, the car in *Germann* was not stopped on a highway where it posed a public safety hazard but was parked on a city street. *See id.* The Superior Court has limited the holding of *Germann* to cases in which public safety is not at issue. *See Commonwealth v. Chambers*, 920 A.2d 892, 897 n.5 (Pa. Super. 2007).

- 13 -

> To the extent Appellant cites to ... **Germann** … for the proposition that the police officer was required to ask [the defendant] whether he wished to make arrangements for the pick-up truck instead of the police impounding it, we find the case to be distinguishable. In **Germann**, a panel of this Court determined that there was no justification for towing the vehicle and there was no evidence that the vehicle at issue was obstructing traffic or otherwise creating a safety hazard. Such was not the situation in the case *sub judice*.

> ***Id.*** As noted above, [Appellant's] car was on the side of an interstate highway and would have posed a public safety hazard if left unattended. Thus, Trooper Kalinchock lawfully impounded [Appellant's] car.

SCO at 13-17 (one citation omitted).

Based on the suppression court's analysis, and our review of the case law relied upon by the court, we ascertain no abuse of discretion in the court's ruling that Appellant's vehicle was lawfully impounded. Therefore, the first prong of the test for determining if a valid inventory search occurred was satisfied.

Appellant, however, also challenges the second prong of the inventory search test. He maintains that Trooper Kalinchock's search was truly for investigative purposes and, therefore, it was not a valid inventory search. The suppression court did not rule on this claim, as it concluded that even if the trooper had searched the car for an improper purpose, the evidence found therein would have been inevitably discovered aside from Trooper Kalinchock's search. The suppression court reasoned:

> Even where evidence has been illegally seized, the evidence is nevertheless admissible if it inevitably would have been discovered pursuant to a lawful search. ***See Nix v.***

***Williams***, 467 U.S. 431, 448 (1984); ***Commonwealth v. Bailey***, 986 A.2d 860, 862 (Pa. Super. 2009); ***Commonwealth v. Gonzalez***, 979 A.2d 879, 890-91 (Pa. Super. 2009).

> [E]vidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual discovery was accomplished through illegal actions. … Suppressing evidence in such cases, where it ultimately or inevitably would have been lawfully recovered, "would reject logic, experience, and common sense."

***Gonzalez***, 979 A.2d at 890-91 (quoting ***Nix***, 467 U.S. at 444).

Thus, even where police perform an illegal search of a vehicle before it is impounded, if the evidence seized inevitably would have been discovered during a routine inventory search of the impounded vehicle, the evidence is admissible under the inevitable-discovery exception. ***See Bailey***, 986 A.2d at 863.

> [B]ecause [the defendant] was arrested while in control of his vehicle, the police were legally permitted to tow the car, they would have conducted an inventory of the car which would have included looking in obvious storage places such as the glove compartment and the center console. Because they would have legally opened the center console during a proper inventory search, the gun would have been found. … Because the police would have been able to tow [the defendant's] car pursuant to his arrest and because the police conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places such as the center console, we must agree that the gun would have inevitably been discovered absent police error or misconduct. Therefore the record supports the suppression court['s] determination that evidence was not subject to suppression.

***Id.***

The same rationale applies here. Even assuming that Trooper Kalinchock searched [Appellant's] car for the improper purpose of locating contraband, the evidence he found is nevertheless admissible, because it inevitably would have been discovered pursuant to a lawful inventory search at the impound lot. Trooper Kalinchock had to arrest [Appellant] due to the

- 15 -

existence of the outstanding warrant. [Appellant's] passenger could not drive the car away from the scene. Therefore, pursuant to 75 Pa.C.S.A. § 3352(c)(3), Trooper Kalinchock had to arrange for the car to be towed to a secure facility. Once in storage, under the Pennsylvania State Police Vehicle Storage Procedure, the car would have been subjected to an inventory search. Because the one hundred ninety (190) packets of heroin seized from [Appellant's] car were located in the center console (as in *Bailey*), it is certain that the heroin would have been found during the inventory search. Accordingly, the heroin is admissible under the inevitable-discovery exception to the warrant requirement.

SCO at 18-20.

Appellant offers one argument challenging the court's admission of this evidence under the inevitable discovery doctrine. He maintains that,

the police inventory policy … fails to specifically identify a policy with regard to the searching of closed compartments within the vehicle, which is an element of a lawful inventory search pursuant to ... *Wells*, 495 U.S. 1 … (police must directly specify a standardred [*sic*] procedure regarding the searching of closed compartments with-in [*sic*] the vehicle, and there can be no room for discretion on the part of the individual officer conducting the search)[,] in conjunction with ... *Bertine*, 479 U.S. 367 …. Under the above authorities, any contraband which has been seized from a closed compartment with-in [*sic*] the vehicle in question will still be inadmissible in the absence of a directive which specifically authorizes an individual officer to open such compartments during a standardred [*sic*] inventory search of the vehicle.

Appellant's Brief at 26.

Appellant does not discuss *Bailey*, or the suppression court's reliance thereon to conclude that the center console of his car would have been lawfully opened during a routine inventory search of his vehicle after it was impounded. In *Bailey*, this Court characterized the center console of a vehicle as an "obvious storage place" that can be "legally opened … during a

- 16 -

proper inventory search…." **Bailey**, 986 A.2d at 862. While Appellant contends that the console was a 'closed compartment' that could not be opened without proof that the police had an inventory policy specifically addressing the opening of such a 'compartment,' the cases on which he relies are distinguishable. Namely, in both **Wells** and **Bertine**, police officers opened a closed *container* - a locked suitcase and a closed backpack, respectively - that was found inside the car. Unlike in the present case, the containers opened in **Wells** and **Bertine** were *separate* containers simply located inside the car - they were not *part of* the vehicle itself, such as the center console is in the present case. Accordingly, Appellant has not convinced us that our holding in **Bailey**, or the suppression court's ruling here, are incorrect in light of **Wells** and/or **Bertine**. Therefore, his challenge to the suppression court's admission of the heroin is meritless.

In Appellant's next issue, his third, he presents several sub-claims. First, he argues that the *court* violated **Brady v. Maryland**, 373 U.S. 83 (1963), by withholding certain evidence.

> [T]o establish a **Brady** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297, 308 (2011).

**Commonwealth v. Haskins**, 2012 PA Super 223, 60 A.3d 538, 545 (2012). Appellant's **Brady** claim, framed at the outset as a *court* error, is

incorrect on its face. In any event, he goes on to argue that the Commonwealth violated *Brady*, premising his entire claim on his belief that the Commonwealth withheld video footage taken from Trooper Kalinchock's patrol vehicle. Appellant has not actually discovered any such video evidence; instead, he merely speculates that such evidence must exist. This unsupported allegation fails to prove that the Commonwealth committed a *Brady* violation.

Also within his third issue, Appellant presents a confusing argument regarding a video that was shown at trial by the Commonwealth. From what we can ascertain, Appellant essentially contends that the video was edited to remove certain portions. Appellant's argument is again based on mere speculation; he does not cite to anything in the record that would support this claim. Therefore, it is meritless.

Likewise, Appellant also challenges the court's admission of a recorded phone call he made while incarcerated, which the Commonwealth turned over on the morning his trial began. Appellant only devotes a few sentences to this claim, simply stating that the Commonwealth committed a discovery violation by not turning this evidence over to him earlier. Appellant's underdeveloped argument does not convince us that the court abused its discretion in admitting this evidence. *See Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted) ("Questions concerning the admissibility of evidence lie within the sound discretion of the trial court,

and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion.").

In Appellant's fourth issue, he argues that the court erred by denying his request for a hearing, prior to the imposition of his sentence, for the court to "determine the amount of drugs intended for personal use and for delivery." Appellant's Brief at 37 (citation to the record omitted). Appellant avers he had a right to such a hearing under ***Commonwealth v. Carroll***, 651 A.2d 171 (Pa. Super. 1995). Appellant does not point to where in the record he requested such a hearing; thus, we deem this issue waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We note that Appellant also embeds, within his fourth issue, lengthy arguments purporting to challenge the sufficiency and weight of the evidence to sustain his convictions. Appellant's arguments are extremely confusing. For instance, he begins by stating that he is challenging the weight of the evidence to support his conviction of following too closely, as defined by 75 Pa.C.S. § 3310. ***See*** Appellant's Brief at 42. However, in support of this claim, Appellant suggests that Trooper Kalinchock's testimony was not *sufficient* to prove that Appellant committed this offense. ***See id.*** at 42-44. Not only does Appellant mischaracterize his sufficiency challenge as a weight-of-the-evidence claim, but in his argument, he only provides citations to portions of Trooper Kalinchock's testimony from the *suppression* hearing. ***See*** Appellant's Brief at 43. The trooper's testimony at the

suppression hearing is irrelevant in assessing either a sufficiency or weight-of-the-evidence claim. Accordingly, Appellant's argument is meritless.

Appellant also challenges the sufficiency of the evidence to sustain his conviction for possession with intent to deliver. *Id.* at 46. We decline to assess the specifics of Appellant's lengthy and confusing claim; rather, we will provide a general discussion of the sufficiency of the evidence. To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

This Court has also explained that,

> [t]o establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. The intent to deliver can be inferred from an examination of the surrounding facts and circumstances. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.
>
> The Commonwealth has the option to establish actual or constructive possession.

- 20 -

> Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. Constructive possession may be established by the totality of the circumstances. We have held that circumstantial evidence is reviewed by the same standard as direct evidence-a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Perez*, 931 A.2d 703, 707-08 (Pa. Super. 2007) (internal citations and quotation marks omitted).

In this case, Trooper Kalinchock testified that Appellant was driving the vehicle when the trooper conducted the traffic stop. N.T. Trial, 12/4/13, at 40. The vehicle was registered to Appellant. *Id.* at 37. During an inventory search of the vehicle, Trooper Kalinchock opened the center console between the two front seats. *Id.* at 53. Inside, the trooper found a large bag containing "wax folds that are consistent with the way heroin is packaged." *Id.* at 44. The trooper also observed that the wax folds were stamped with the words "Zero Tolerance." *Id.* Based on the trooper's training and experience, he believed that the bag contained heroin. *Id.* at 45. He seized the bag of drugs, which was later determined to contain 19 bundles of heroin. *Id.* at 54. Each bundle contained "10 individually waxed folds of heroin. They were rubber banded together and each one contained 10 packets, so 190 packets total; 19 bundles of 10." *Id.* The wax folds were stamped with the words "Zero Tolerance." *Id.*

Additionally, the other individual present in Appellant's vehicle when it was stopped by Trooper Kalinchock testified for the Commonwealth at

Appellant's trial. That man, Carlos Salas, testified that prior to Trooper Kalinchock's discovering the heroin in Appellant's vehicle, he had never seen those drugs. *Id.* at 145. Salas stated that he did not know the drugs were in Appellant's car, and at no point was he inside the vehicle by himself. *Id.* He testified that on the night of the traffic stop, Appellant picked him up in the vehicle and the two drove around until Trooper Kalinchock stopped them. *Id.* He testified that when the trooper confronted him with the drugs and asked if they were his, Salas "said no." *Id.* at 146.

This evidence was sufficient to demonstrate that Appellant constructively possessed the heroin, and did so with the intent to deliver it. The drugs were located in the center console directly beside Appellant. Appellant owned the vehicle and was driving it. The only other person in the vehicle, Salas, testified that he did not know the drugs were in the car, and he denied that they were his. These facts were sufficient for the jury to infer that Appellant had the ability, power, and intent to exercise control over the heroin and, thus, that he constructively possessed those drugs. Additionally, the large quantity of drugs was alone sufficient to demonstrate that Appellant intended to sell them. *See Commonwealth v. Jackson*, 645 A.2d 1366, 1368 (Pa. Super. 1994) ("In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substances.") (citations omitted). Accordingly, the evidence was sufficient to prove Appellant's PWID offense. We also note that the jury's verdict convicting Appellant of this offense was not contrary to the weight of the

evidence, as it does not "shock[] one's sense of justice." ***Commonwealth***

***v. Houser***, 18 A.3d 1128, 1136 (Pa. 2011) (citation omitted).[2]

In Appellant's next issue, his fifth, he presents numerous challenges to

the admission of certain evidence.

> The standard of review employed when faced with a challenge to
> the trial court's decision as to whether or not to admit evidence
> is well settled. Questions concerning the admissibility of evidence
> lie within the sound discretion of the trial court, and a reviewing
> court will not reverse the trial court's decision absent a clear
> abuse of discretion. Abuse of discretion is not merely an error of
> judgment, but rather where the judgment is manifestly
> unreasonable or where the law is not applied or where the record
> shows that the action is a result of partiality, prejudice, bias or ill
> will.

***Young***, 989 A.2d at 924 (citations omitted).

First, Appellant reiterates a challenge to the admission of a recorded

phone call made by Appellant to his grandmother while Appellant was

incarcerated.[3]  In that phone call, Appellant essentially tells his grandmother

---

[2] As discussed, *supra*, the judge who presided over Appellant's trial left the bench in Northampton County before ruling on Appellant's post-sentence motion raising his weight-of-the-evidence claim.  Facing these same circumstances in ***Armbruster v. Horowitz***, 744 A.2d 285 (Pa. Super. 1999), this Court concluded that such a scenario is "an exception to the general rule that a court, relying solely on a 'cold' record, may not exercise a review of a weight of the evidence claim." ***Id.*** at 286.  We further stated that, "[i]n these exceptional circumstances, we believe the interests of justice require that the weight of the evidence claim be reviewed by the appellate tribunal rather than vacating the judgment and remanding for a new trial." ***Id.*** at 286-87.

[3] Appellant also briefly addressed the admission of this evidence in his third issue, discussed *supra*.

that he was not planning on selling the heroin, but claims he purchased it for personal use. **See** Appellant's Brief at 54; **see also** N.T. Trial, 12/5/13, at 6. Appellant explained that he bought such a large amount "because when you buy a lot it's cheaper[.]" Appellant's Brief at 54; **see also** N.T. Trial, 12/5/13, at 6.

Appellant provides an excessively lengthy and confusing argument, offering various reasons why he believes the court erred by admitting this recorded phone conversation. However, at trial, defense counsel objected to the admission of this recording on the basis that the Commonwealth had committed a discovery and/or **Brady** violation by not turning this evidence over to the defense earlier than the day on which Appellant's trial was set to begin. **See** N.T. Trial, 12/5/13, at 13-16. In response, the Commonwealth stressed that it did not willfully withhold the recording; rather, it maintained that it had not discovered the recorded phone call until December 3, 2013. The Commonwealth maintained that upon discovering the recording, it immediately called defense counsel, informed him about the content of the conversation, and turned a copy of the recording over to the defense as soon as it was available, which was on December 4, 2013. **Id.** at 17.

The court ruled that the Commonwealth did not have an obligation to discover this evidence earlier, and that as soon as the Commonwealth came into possession of the recording, it turned it over to defense counsel. The court also noted that "[e]ven if [the recording] had been turned over earlier, [the court could not] fathom what the defense could have done to meet it.

- 24 -

There's no indication that it could be suppressed in any fashion. There's no indication it could have been forged or that the authentication of it was in question where an expert needed to be called [to verify] it was his voice." *Id.* at 18. Nevertheless, the court asked defense counsel if he would be "requesting a continuance in order to prepare to meet this new evidence[,]" and defense counsel replied, "No, Your Honor." *Id.*

Herein, Appellant attempts to present novel theories regarding why this recording should not have been admitted. However, only the arguments presented by defense counsel below are preserved for our review. *See* Pa.R.A.P. 302(a). Because Appellant offers no clear discussion pertaining to those preserved arguments, he has not convinced us that the court abused its discretion by admitting the evidence of his recorded phone conversation.

Within this issue, Appellant also challenges the court's "allowing the [jury] to hear numerous references, by both witnesses for the prosecution as well as the District Attorney, regarding a 'felony gun warrant' or [Appellant's] being entered as 'wanted - armed and dangerous' in the in-car [police] computer system…." Appellant's Brief at 56. Appellant does not cite to where in the record he objected to these 'numerous references.' While he does direct us to where these references were made, none of those portions of the transcript contain any objection by defense counsel. *See* Appellant's Brief at 57 (citing N.T. Trial, 12/4/13, at 93, 148, 163-165). Indeed, several of Appellant's citations refer to defense counsel's cross-examination of one of the police officers present at the scene of Appellant's traffic stop. *See id.*

(citing N.T. Trial, 12/4/13, at 177-178). As Appellant did not object to these purportedly improper references to his 'felony gun warrant' or the fact that he was labeled 'armed and dangerous' in the police computer system, he has waived those issues for our review. *See Commonwealth v. Bruce*, 916 A.2d 657, 671 (Pa. Super. 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim).

Similarly, Appellant also alleges that the prosecutor made improper comments during her closing argument, yet the portions of the record to which he cites contain no defense objection. *See id.* at 58 (citing N.T. Trial, 12/5/13, at 132, 142, 144). Thus, this argument is also waived. *See Bruce, supra*.

Finally, in his last issue, Appellant appears to challenge the discretionary aspects of his sentence. We need not address his specific arguments, as the record indicates that the court imposed an illegal mandatory minimum term of incarceration under 18 Pa.C.S. § 7508, which has been declared unconstitutional in its entirety in light of *Alleyne v. United States*, 133 S.Ct. 2151, 2163 (2013) (holding that facts that increase a mandatory minimum sentence must be submitted to the fact-finder and proven beyond a reasonable doubt). *See Commonwealth v. Cardwell*, 105 A.3d 748, 755 (Pa. Super. 2014) (deeming section 7508

unconstitutional in light of **Alleyne**).[4]   While Appellant does not raise this claim, "challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (citation, internal quotation marks, and brackets omitted).   Because Appellant's sentence is illegal under **Alleyne** and **Cardwell**, we vacate that sentence and remand for resentencing.

Judgment of sentence vacated.   Case remanded for resentencing. Jurisdiction relinquished.

_____

[4] At the sentencing hearing, the court indicated that Appellant's minimum sentence of two years' incarceration for PWID was a mandatory minimum term under 18 Pa.C.S. § 7508(a)(7)(i) ("A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is heroin shall, upon conviction, be sentenced as set forth in this paragraph: (i) when the aggregate weight of the compound or mixture containing the heroin involved is at least 1.0 gram but less than 5.0 grams the sentence shall be a mandatory minimum term of two years in prison…."). **See** N.T. Sentencing, 12/14/14, at 6 (court's stating that "the amount of heroin was determined to be … greater than one gram but less than ten grams," and thus, "mandatory minimum of two years['] incarceration" applied); **see also id.** at 18 (court's stating: "I'm sentencing you to the mandatory minimum in the state correctional institution, but I'm setting a maximum of eight years.  So a minimum in the state correctional institution of two years to a maximum of eight years….").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/21/2016</u>