J-A25003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DURON HAROLD SMITH | |
| Appellant | No. 1960 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 31, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0004080-2017

BEFORE:  STABILE, McLAUGHLIN, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:             **FILED FEBRUARY 24, 2020**

Appellant Duron Harold Smith appeals from the October 31, 2018 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court"), following his jury convictions for possession with intent to deliver ("PWID") a controlled substance (crack cocaine), and possession of drug paraphernalia.[1]  Upon careful review, we affirm.

On June 24, 2017, Detective Nicholas Ishman, Harrisburg Police Department, charged Appellant with the foregoing crimes.  In his affidavit companying the criminal complaint, Detective Ishman stated that, on June 23, 2017:

> [Appellant] was taken into custody by State Parole Agent Allen Shipley [("Officer Shipley")] for parole violations.  [Appellant] was removed from a vehicle that was parked in front of [Appellant's] residence of 1901 Boas Street, in the City of Harrisburg,

---

[1] 35 P.S. § 780-113(a)(30), (32), respectively.

Pennsylvania. On [Appellant's] seat was a green Crown Royal Bag containing a large amount of suspected crack cocaine and [a] digital scale. Search incident to arrest produced 2 cell phones and $1237 in US currency.

Affidavit of Probable Cause, 6/24/17. The charges were held for court. On November 16, 2017, Detective Ishman applied for and obtained a warrant to search the two cell phones.[2] On January 11, 2018, Appellant filed an omnibus pre-trial motion ("First Suppression Motion"), alleging that Officer Shipley's search and seizure of the vehicle violated both the federal and Pennsylvania constitutions and, consequently, seeking the suppression of all evidence obtained from the alleged illegal search.

On January 22, 2018, the trial court held a hearing on the First Suppression Motion, at which the Commonwealth offered the testimony of Officer Shipley. He testified that he has been employed with the State Board of Probation and Parole since 2013, but has worked as a parole officer since 2005. N.T. Hearing, 1/22/18 at 4. Describing his duties as a state parole officer, Officer Shipley testified "I am currently assigned to the Harrisburg City Street Crimes Unit. With that unit, I supervise cases that are high risk offender cases, maximum supervision, those with criminal histories that

_____

[2] In **Commonwealth v. Fulton**, 179 A.3d 475 (Pa. 2018), our Supreme Court cautioned that "if a member of law enforcement wishes to obtain information from a cell phone, get a warrant. The failure to do so [violates a defendant's] rights under the Fourth Amendment to the United States Constitution." **Id.** at 489. This requirement, however, does not apply to parolees. As detailed **infra**, we specifically have held that a warrantless search of cell phone is proper when the search involves a parolee and the parole officer has reasonable suspicion to believe there was a violation of parole. **See Commonwealth v. Murray**, 174 A.3d 1147, 1156 (Pa. Super. 2017), **appeal denied**, 187 A.3d 204 (Pa. 2018).

include but not limited to firearms, drug sales, robberies, violent crimes." *Id.*

With respect to his interaction with parolees, Officer Shipley stated:

> my caseload is relatively small in order to make sufficient contacts with a maximum level. And those parolees that are at maximum level need to be seen twice a month, two—two face-to-face contacts a month. One I usually see in the office; the second I usually see out at their home, at their residence.

*Id.* at 5. Officer Shipley testified that, in June 2017, he was supervising Appellant, who was on parole for a PWID conviction in Dauphin County. *Id.* at 5-6. Officer Shipley specifically recalled an encounter with Appellant on June 18, 2017 that occurred between 7:00 and 9:00 p.m. *Id.* at 6. He testified:

> I observed [Appellant] getting into a vehicle, the passenger's side of a vehicle. I observed that vehicle then complete a U-turn in the middle of the street, and then it pulled up on the side of – the side entrance to 1901 Boas Street. And then I saw [Appellant] quickly get out of the vehicle. At that time he was with a female who also quickly exited the vehicle. I asked my police partner at that if – and I don't – like, I have to refer to my notes, but I do have who my partner was at the time of that incident – that I would like to make contact with [Appellant]. We subsequently pulled behind the vehicle. I made contact with [Appellant] at the – at the side of the house.

*Id.* at 7 (sic). Describing his observations of Appellant, Officer Shipley stated:

> At that time he smelled of alcohol. He had a large sum of money in cash. I asked him at that point in time, you know, what—he was on GPS monitoring for a pending DUI charge. We continued him on supervision and on the street so he can fight these charges from the street, so to speak. And those charges occurred approximately April 2017. But I did smell alcohol on his breath. He had a large sum of money in his pockets. I asked him, I said, is there anything illegal in the car that he got out of? He said – he said no. I said, Do you mind if I search it? He said, "No, you can't search," which is fine. I understand that. I asked the driver of the vehicle, and the driver then said no. I asked [Appellant] what he was doing on this evening. He said, we went—we were going to go get some chicken wings, is what he explained to me.

*Id.* at 7-8 (sic). Officer Shipley recalled leaving the scene after this encounter and Appellant was not taken into custody at that point. *Id.* at 8-9. On June 22, 2017, Officer Shipley discussed the June 18 incident with his supervisors who were aware of Appellant's pending DUI charge. *Id.* at 9. As a result, Officer Shipley and his supervisors decided to arrest Appellant for a technical parole violation triggered by his alcohol consumption on June 18, 2017. *Id.*

On June 23, 2017, Officer Shipley and Detective Ishman went to Appellant's residence to take him into custody for parole violation. *Id.* at 10. Upon arrival, they observed two males sitting in a parked white sedan. *Id.* at 11. Officer Shipley testified that as he approached the vehicle, he saw Appellant, wearing a baseball cap and sitting "slumped down" in the front passenger seat. *Id.* He then recalled Appellant telling the driver (subsequently identified as Appellant's brother) to "pull off, bro; pull off, bro." *Id.* Officer Shipley testified that "[a]t that time I immediately went to the passenger's side of the vehicle and placed [Appellant] into custody." *Id.* After he detained Appellant, Officer Shipley recalled putting his head into the vehicle to instruct the driver to put the vehicle in park. *Id.* at 12. In so doing, Officer Shipley observed a green, cinch Crown Royal bag on the passenger seat where Appellant was sitting and where his left leg or the seatbelt fastener would have been. *Id.* at 13-14. Officer Shipley testified that he opened the bag and recovered scales and crack cocaine, which he then handed over to Detective Ishman. *Id.* at 12.

On February 27, 2018, the trial court denied Appellant's First Suppression Motion. On April 19, 2018, Appellant filed a second omnibus pre-trial motion ("Second Suppression Motion"), challenging the search of the cell phones. In support, Appellant argued, *inter alia*, that (1) the affidavit of probable cause accompanying the search warrant did not set forth adequate probable cause; and (2) the search warrant itself was overbroad.

On May 3, 2018, the trial court conducted a hearing on the Second Suppression Motion, at which the Commonwealth introduced the testimony of Detective Ishman who testified that he had been employed by the Harrisburg Police Department for over ten years and currently is assigned to the Vice and Organized Crime Unit. N.T. Hearing, 5/3/18 at 4. Detective Ishman testified that he has been involved in hundreds of narcotics investigations and arrests. *Id.* Detective Ishman testified that upon hearing Appellant tell the driver to pull off, Officer Shipley removed Appellant from the vehicle and took him into custody. *Id.* at 6. Thereafter, according to Detective Ishman, Officer Shipley "recovered a Crown Royal bag from the passenger seat of the vehicle that contained a large amount of crack cocaine." *Id.* Specifically, Detective Ishman testified that Officer Shipley handed the Crown Royal bag to him. *Id.* at 6-7. Therein, Detective Ishman found "[a] large amount of crack cocaine[.]" *Id.* Detective Ishman relayed that he recovered a digital scale and five sandwich bags containing various amounts of crack cocaine. *Id.* at 7-8. Detective Ishman testified that he also searched Appellant and the search yielded $1,237.00 and a cell phone. *Id.* at 8. Detective Ishman further

testified that he searched the vehicle and recovered an additional cell phone that was found on the floor of the passenger seat. *Id.* Detective Ishman also testified that he eventually applied for a warrant to search the cell phones, in particular "[p]hone records, text messages, social media posts, messages, drugs, drug transactions, drug proceeds, and drug sales." *Id.* at 10. Detective Ishman explained that in his experience and given his training, "it's typical and happens very often that drug dealers use cell phones to set up drug transactions via text messages, via phone – phone calls. And also I've seen Facebook Messenger being used quite often." *Id.* He also explained that drug dealers usually possess multiple phones. "They use [a work] phone for the drugs, for drug dealing, and then another phone for personal life, much like someone would do when they would have a job and have a work phone as well." *Id.* at 10-11.

In his affidavit of probable cause accompanying the search warrant, Detective Ishman stated in relevant part:

> As [Officer] Shipley approached the vehicle [Appellant] was heard telling the driver of the vehicle, Lawrence Johnson, "Cmon man pull off, pull off." [Officer] Shipley arrived at the passenger side of the vehicle, removed [Appellant] and took him into custody. I told Johnson to put the car in park and keep his hands where I could see them. Johnson first put the vehicle in drive and appeared as if he was going to pull off, he did eventually put the vehicle in park. [Officer] Shipley recovered a Green Crown Royal Bag from [Appellant]'s seat. Located inside the bag was 5 sandwich bags containing various amounts of suspected crack cocaine and a digital scale. Many of these bags had torn holes in them, a characteristic consistent with street level drug trafficking. The 5 bags were contained in one clear ziplock bag.
>
> Search incident to [Appellant] produced $1237 (denominations 2-100, 49-20s, 2-10s, 4-5s and 17-1s) from various pockets of [Appellant]'s jeans and a cell phone. A further search of a the vehicle produced a cell phone from the floor in front of

- 6 -

[Appellant]'s seat. These two cell phones and US Currency were collected as evidence.

Once at base the suspected crack cocaine was field tested and did show a positive test for the presence of cocaine. The digital scale and the ziplock bag containing all the suspected crack cocaine were sent to forensics for fingerprinting. The money will be sent to be ion scanned.

[I am] requesting a search warrant for the two cell phones recovered from the person of [Appellant] and the floor of the vehicle where [Appellant] was sitting. It is [my] experience that drug dealers often use cell phones to facilitate drug transactions with drug users and other drug dealers. It is also [my] experience that drug dealers often have numerous cell phones to facilitate their transactions. During these interactions the drug dealers and drug users often make phone calls and send text messages. For this reason [I am] requesting a search warrant for the Samsung and Tracfone cell phones recovered during this investigation to search for information regarding drug transactions. These cell phones have been secured in police custody since the time of this incident.

Affidavit of Probable Cause, 11/16/17. Detective Ishman testified that they were able to extract data only from the Samsung phone. N.T. Hearing, 5/3/18 at 19-20. On July 27, 2018, the trial court granted in part and denied in part Appellant's Second Suppression Motion. The motion was granted only to the extent that the court found the search warrant to be partially overbroad. As a result, the trial court limited the admission of evidence obtained from the search of the cell phones temporally, *i.e.*, the Commonwealth's use of the evidence was restricted in time from June 18, 2017 through June 23, 2017.[3]

The case proceeded to a jury trial, at which the trial court allowed, over Appellant's objections, the Commonwealth to introduce and admit into

---

[3] In curing the defect in the search warrant, the trial court relied upon **United States v. Santiago-Rivera**, 2017 WL 4551039, *12-16 (M.D. Pa. October 12, 2017).

evidence information extracted from the Samsung cell phone.  N.T. Trial, 10/23/2018 at 22-27.  In specific, Appellant asserted an authentication objection pursuant to Pa.R.E. 901(a).  The Commonwealth also presented the expert testimony of John Goshert, Chief Detective for the Dauphin County Criminal Investigation Division.  *Id.* at 165-66.  The Commonwealth asked Chief Goshert to answer a hypothetical question that contained the facts underlying this case.  *Id.* at 171-73.  Appellant timely objected, arguing, among other things, that Chief Goshert may not be given a hypothetical based on the facts of the case.  *Id.* at 173-74.  The trial court overruled the objection.  *Id.* at 174.  On October 24, 2018, the jury found Appellant guilty of PWID and possession of drug paraphernalia.  On October 31, 2018, the trial court sentenced Appellant to an aggregate term of 42 to 120 months' imprisonment.  Appellant did not file any post-sentence motion; he timely appealed.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal,[4] Appellant presents four issues for our review:

---

[4] In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct.  When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  When the record supports the findings of the [trial] court, we are

- 8 -

I.  Did the court err in denying [Appellant's] motion to suppress the fruits of a state parole agent's warrantless vehicle search after arresting [Appellant] for a technical violation of parole?

II.  Did not the court err in denying [Appellant's] motion to suppress the extraction of data from [Appellant's] cell phone when: (a) the affidavit supporting the search warrant did not set forth probable cause; and (b) the search warrant itself was overly broad?

III.  Did not the court err in admitting communications extracted from a cell phone when the Commonwealth failed to authenticate such evidence under [Rule] 901 by establishing [Appellant's] authorship of such communications?

IV.  Did not the court err in permitting a police witness to give an expert opinion regarding [Appellant's] intent to deliver crack cocaine when that opinion was based on a hypothetical that embraced the entirety of the evidence presented at trial and not the limited factors permitted under the decisional law?

Appellant's Brief at 5 (unnecessary capitalizations omitted).

Preliminarily, we need not address Appellant's second issue on appeal because, as noted earlier, the warrant requirement for cell phones is generally inapplicable to parolees. "It is well settled that in exchange for early release

_____

bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Griffin**, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. **In re interests of L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013). We have explained:

Our standard of review over evidentiary rulings requires us to determine whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

**Commonwealth v. Henkel**, 938 A.2d 433, 440 (Pa. Super. 2007) (internal citations omitted), **appeal denied**, 955 A.2d 356 (Pa. 2008).

- 9 -

from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Murray*, 174 A.3d at 1155 (citation, quotation marks and brackets omitted); *see also* 61 Pa.C.S.A. § 6153(a) (explaining that the purpose of parole "is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public."). Thus, a parole officer is not required to obtain a warrant based on probable cause before conducting a parole search. *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018). Instead, a parole agent may conduct a property search of an offender "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S.A. § 6153(d)(2); *see also Murray*, 174 A.3d at 1155 (explaining that reasonable suspicion is sufficient for parole searches due to the assumption that a parolee is more likely to violate the law). "[A] search of a parolee's property will be deemed reasonable if the evidence shows that: (1) the parole officer had reasonable suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officer's duty." *Murray*, 174 A.3d at 1155-56. In *Murray*, we held that the evidence established that the parole agent's search of the appellant's cell phone was based on reasonable suspicion that the appellant had committed a parole violation. There, the parole agent testified at the suppression hearing that the appellant admitted to possessing a firearm after an altercation with a housemate, which was a violation of his parole. The agent also testified that

based on his prior experience, he believed that the appellant's cell phone could contain additional evidence of a parole violation, such as conversations about the firearm or photographs of the appellant with the firearm. *Id.* at 1156. Instantly, Officer Shipley or Detective Ishman had ample reasons to search Appellant's cell phone (Samsung) considering that a Crown Royal bag containing a large amount crack cocaine and a digital scale was discovered on the seat where Appellant had been sitting prior to his arrest by Officer Shipley for a technical parole violation.

With respect to Appellant's remaining issues, after careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed their merits. *See* Trial Court Opinion, 1/25/19, at 4-13. We agree with the trial court's conclusion that Officer Shipley had reasonable suspicion to search the vehicle, in particular the Crown Royal bag sitting in plain view. The Crown Royal bag could have yielded additional evidence of Appellant's parole violation. The trial court did not abuse its discretion in overruling Appellant's authentication challenge because the Commonwealth, through testimony, "was able to establish and properly authenticate that [Appellant] was using the phone around the same time as the texts that were previously introduced indicating drug sales." *Id.* at 12. Finally, the trial court concluded that Appellant's challenge to the hypothetical

question posed to Chief Goshert was without merit.[5]  Accordingly, we affirm the trial court's October 31, 2018 judgment of sentence.  We further direct that a copy of the trial court's January 25, 2019 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/24/2020

---

[5] Pa.R.E. 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Moreover, it is well-settled that the Commonwealth may ask an expert a hypothetical question so long as "there is evidence of record supporting the hypothetical."  **_Commonwealth v. Galvin_**, 985 A.2d 783, 801 (Pa. 2019).  "[A]n expert may give an opinion in response to a hypothetical, provided the set of facts assumed in the hypothetical is eventually supported by competent evidence and reasonable inferences derived therefrom." **_Commonwealth v. Petrovich_**, 648 A.2d 771, 772 (Pa. 1994).



COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS
                                             : DAUPHIN COUNTY, PENNSYLVANIA
                                             :

                     vs.                             : NO. 4080 CR 2017
                                             :
                                             : CRIMINAL MATTER - APPEAL
DURON HAROLD SMITH                         :
                     Defendant/Appellant          :

## MEMORANDUM ORDER

Presently before this Court is the Appeal filed in the above-captioned matter. This opinion is written pursuant to Pa.R.A.P. 1925(b).

## PROCEDURAL BACKGROUND

Appellant was charged via criminal complaint at Count 1 – Possession with Intent to Deliver a Controlled Substance (PWI)[1] and at Count 2 – Possession of Drug Paraphernalia[2] on June 23, 2017. Appellant was formerly arraigned on September 1, 2017. Thereafter on January 11, 2018 Appellant filed his *first* Pre-Trial Motion and a suppression hearing was subsequently held on January 22, 2018. An Order denying Appellant's *first* Pre-Trial Motion was filed on February 27, 2018. On April 19, 2018, a *second* Pre-Trial Motion was filed by the Appellant and another suppression hearing was held on May 3, 2018. An Order denying Appellant's *second* Pre-Trial Motion was filed on July 27, 2018. The case was then listed for trial.

---

[1] 35 P.S. §780-113(a)(30).
[2] 35 P.S. §780-113(a)(32).

1

**SCANNED**

51-15

Following a jury trial concluding on October 24, 2018, Appellant was found guilty at the above-captioned docket as follows: at Count 1 – Possession with Intent to Deliver a Controlled Substance (PWI)[3] and at Count 2 – Possession of Drug Paraphernalia.[4] On October 31, 2018, Appellant was sentenced at Count 1 to a period of incarceration of not less than 42 months nor more than 120 months. At Count 2, Appellant was sentenced to a 12 month term of county probation running concurrently with Count 1. Appellant had 16 months and 7 days of time credit prior to sentencing.

No post-sentence motion was filed. On November 20, 2018, Appellant filed a Notice of Appeal. In compliance with our 1925(b) Order, Appellant filed a Statement of Errors Complained of on Appeal raising the following issues for review:

1. The Court erred in denying Defendant's motion to suppress all items of physical evidence seized by the authorities from a certain vehicle without a warrant after they ordered Defendant out of the vehicle and placed him under arrest.
2. The Court erred in denying Defendant's motion to suppress the results of the analysis of the contents of Defendant's cell phones.
3. The Court erred in denying Defendant's objection to the introduction of text messages found on Defendant's phone.
4. The Court erred in denying Defendant's objection to certain expert testimony proffered by the Commonwealth.
5. The Court erred in sustaining the Commonwealth's objection to Defendant's introduction of evidence that Lawrence Johnson in 2004 was convicted of the offense of possession with intent to deliver crack cocaine.[5]

## FACTUAL BACKGROUND

We briefly set forth the facts adduced at trial. On June 23, 2017, State Parole Agent Allen Shipley (Agent Shipley) was partnered with Detective Nicholas Ishman of the Harrisburg Police

---

[3] 35 P.S. §780-113(a)(30).
[4] 35 P.S. §780-113(a)(32).
[5] This Court summarized the arguments as set forth by the Appellant. *See* Defendant's Statement of Errors filed December 24, 2018

Department for the purpose of taking the Appellant into custody for a parole violation. Transcript of Proceedings, Jury Trial, October 22-24, 2018, pages 52-53 (hereinafter "N.T. at __").[6] Agent Shipley and Detective Ishman located the Appellant at 1901 Boas Street, Harrisburg, PA. N.T. at 54. Approaching the residence, they noticed Appellant sitting in the passenger seat of a vehicle. As they neared the vehicle, they heard the Appellant tell the driver to "pull off bro, pull off." N.T. at 59. Agent Shipley was able to open the door and removed the Appellant from the vehicle. N.T. at 59-60. As he was doing so, Agent Shipley noticed a green Crown Royal bag by the buckle or the latch to the seat belt of the passenger side seat (where the Appellant was sitting).[7] N.T. at 60. Inside the bag was crack cocaine packaged in sandwich bags and a digital scale. N.T. at 61.

Through Detective Ishman, the Commonwealth introduced the green Crown Royal bag, the crack cocaine with the Ziploc baggies, and the digital scale. N.T. at 88. Detective Ishman also testified that the Appellant was found with $1,237 and a Samsung cell phone found on his person. N.T. at 95. A Trac cell phone was also located on the passenger side floor. *Id.* Detective Ishman conducted search warrants of the cell phones and testified to their contents. N.T. at 97-114. Additionally, Ariele Morrison, an ex-girlfriend of Appellant's testified to texts/phone calls she had with the Appellant. N.T. at 134-143. Finally, the Commonwealth introduced the testimony of Chief John Goshert, a Detective for the Dauphin County Criminal Investigation Division, who testified as an expert that, based off a hypothetical of the facts of the case, Appellant possessed the crack cocaine with the intent to deliver or sell. N.T. at 166-175.

---

[6] The fact that Appellant was being picked up on a parole violation was not known to the jury. Instead, Agent Shipley testified that this was a routine law enforcement investigation. N.T. at 54.
[7] We note that Appellant was on parole for DUI related offenses.

3

## DISCUSSION

1.  <u>Motion to Suppress Physical Evidence</u>

Defendant contends that this Court erred in denying to suppress all items of physical evidence seized by the authorities without a warrant. The physical evidence included controlled substances, purported items of drug paraphernalia, and a cell phone. Defendant alleges that the search and seizure were illegal under the Fourth Amendment to the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution. We disagree.

A suppression hearing on this issue were held on January 22, 2018. For the sake of convenience, we reiterate our reasoning as set forth in our Order, dated February 27, 2017. Defendant contends that the evidence seized was in violation of the United States and Pennsylvania Constitutions. It is well-settled that "[i]n exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Commonwealth v. Edwards,* 874 A.2d 1192, 1197 (Pa. Super. 2005). "Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the [parole] agents need not have probable cause to search a parolee or his property; instead <u>reasonable suspicion is sufficient to authorize a search.</u>" *Commonwealth v. Curry,* 900 A.2d 390, 394 (Pa. Super. 2006) (emphasis added; internal quotations omitted). Additionally, in Pennsylvania, a search of a parolee's property will be deemed reasonable if the evidence shows that" (1) the parole officer had reasonable suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officer's duty. *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031, 1036 (1997).[8]

---

[8] *See also* 61 Pa.C.S. § 6153(d)(2). We also note the factors as indicated in 61 Pa.C.S. § 6153(d)(6) in determining whether there was reasonable suspicion.

4

Here, Parole Officer Allen Jay Shipley (PO Shipley) testified that he is currently employed with the Board of Probation and Parole and that he was supervising the Defendant. Transcript of Proceedings, Suppression Hearing, January 22, 2018, page 4 (hereinafter "Supp. 1 N.T. at ___"). PO testified that the Defendant was on parole on June 18, 2017 and PO Shipley observed the Defendant getting in a vehicle, that vehicle making a U-turn, and then the Defendant quickly exiting the vehicle along with another female. *Id.* at 7. PO Shipley made contact with the Defendant and he smelled of alcohol and had a large sum of money in cash (a violation of his parole) *Id.* Additionally, the Defendant was on GPS monitoring for a pending DUI charge. *Id.* at 7-8. After talking to his supervisor, it was determined that the Defendant would be taken into custody for a parole violation. *Id.* at 9. On June 23, 2017, PO Shipley went to the Defendant's address and noticed two males sitting in a white sedan. *Id.* at 11. As PO Shipley approached the vehicle, he noticed the Defendant, slumped down with a baseball cap on, sitting in the vehicle. *Id.* PO Shipley then heard the Defendant tell the driver (later identified as his brother) to "pull off, bro; pull off, bro"). *Id.* Defendant was placed in custody. As PO Shipley was telling the driver to put the car in park, he noticed a Crown Royal bag on the seat right where the Defendant's left leg would have been (where the seat belt fastener would be). *Id.* at 13-14. PO Shipley retrieved the bag, opened the bag and discovered scales and crack cocaine. *Id.* at 12.

Based off the totality of the circumstances, PO Shipley had reasonable suspicion to suspect that a Crown Royal bag that was sitting on the seat previously occupied by the Defendant would yield evidence of a parole violation. PO Shipley previously encountered the Defendant with an odor of alcohol and a large sum of cash. Additionally, as PO Shipley, who testified credibly and knew the Defendant was on parole for a pending DUI charge, approached the Defendant, he heard the Defendant tell the driver to pull off and drive away. The Defendant was also on GPS

5

monitoring for a DUI offense. When the PO Shipley noticed a bag of Crown Royal (that could reasonably contain a bottle of Crown Royal), in plain view sitting where the Defendant previously sat he had reasonable suspicion to believe that this would yield evidence of a parole violation.[9] Also, the Crown Royal bag was well-within reach of Defendant at the time of the arrest. As such, this Court finds that reasonable suspicion of a parole violation was established and the parole officer properly seized the bag containing scales and crack cocaine.

## 2. "Cell Phone Dump"

Next, Defendant contends that the contents of Defendant's cell phones should have been suppressed because 1) the affidavit supporting the search warrant did not set forth adequate probable cause, 2) the search warrant itself was overbroad, and 3) the police manipulated the cell phone prior to procuring the search warrant.

A search warrant must be supported by probable cause. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Torres,* 177 A.3d 263, 270 (Pa. super. 2017) (citations omitted). Additionally, our Superior Court has set forth the following:

> Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth

---

[9] With respect to constructive possession, prior Pennsylvania Courts have held: "When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. *Commonwealth v. Valette,* 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. *Commonwealth v. Mudrick,* 510 Pa. 305, 507 A.2d 1212, 1213 (1986).

6

in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 [ ] (1983), and adopted in *Commonwealth v. Gray*, [ ] 503 A.2d 921, 503 A.2d 921 ( [Pa.] 1985). A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

*Commonwealth v. Rapak*, 138 A.3d 666, 670-71 (Pa. Super. 2016) (some internal quotation marks and citation omitted).

In the instant matter, the Affidavit of Probable Cause underlying the search warrant for the cell phone(s) stated, in relevant part, as follows:

The Affiant is Detective Nicholas Ishman of the Harrisburg Police Department. The Affiant has been a Police Officer for over 9 years and is currently assigned to the Harrisburg Police Vice Control and Organized Crime Unit...During this time the Affiant has been involved in hundreds of investigations and has made numerous arrests for firearms and narcotics violations which have resulted [in] successful prosecutions in Dauphin County Courts. Affiant has also worked in an undercover capacity purchasing illegal narcotics.

On 6/23/17, [Detective Ishman] was in full Street Crimes Uniform, driving an unmarked vehicle, partnered with State Parole Agent Allen Shipley. At approximately 2109 hours [Detective Ishman] was assisting Agent Shipley with taking one of his Parole Offenders, Duron Smith, into custody for parole violations....

As [A]gent Shipley approached the vehicle [Appellant] was heard telling the driver of the vehicle, Lawrence Johnson, "Cmon man pull off, pull off." Agent Shipley arrived at the passenger side of the vehicle, removed Smith and took him into custody... Agent Shipley recovered a Green Crown Royal Bag from [Appellant's] seat. Located inside the bag was 5 sandwich bags containing various amounts of suspected crack cocaine and a digital scale. Many of these bags had torn holes in them, a characteristic consistent with street level drug trafficking. The 5 bags were contained in one clear ziplock bag.

Search incident to [Appellant] produced $1237 (denominations 2-100, 49-20s, 2-10s, 4-5s and 17-1s) from various pockets of [Appellant's] jeans and a cell phone. A further search of the vehicle produced a cell phone from the floor in front of [Appellant's] seat. These two cell phones and US Currency were collected as evidence.

7

> Once at base the suspected crack cocaine was field tested and did show a positive test for the presence of cocaine. The digital scale and the ziplock bag containing all the suspected crack cocaine were sent to forensics for fingerprinting. The money will be sent to be ion scanned.
>
> Affiant is requesting a search warrant for the two cell phones recovered from the person of Duron Smith and the floor of the vehicle where Duron Smith was sitting. It is Affiant's experience that drug dealers often use cell phones to facilitate drug transactions with drug users and other drug dealers. It is also the Affiant's experience that drug dealers often have numerous cell phones to facilitate their transactions. During these interactions the drug dealers and drug users often make phone calls and send text messages. For this reason Affiant is requesting a search warrant for the Samsung and Tracfone cell phones recovered during this investigation to search for information regarding drug transactions.

Affidavit of Probable Cause, 11/16/17.

Thus, the evidence established that Appellant was in close proximity to drugs, a digital scale, and had a significant amount of money on his person. Additionally, Appellant was discovered with a cell phone on his person and a cell phone was discovered on the floor of the vehicle where Appellant was sitting, all indicative of the distribution of a controlled substance. Based upon the foregoing, the evidence established probable cause for officers to believe that additional evidence of narcotics distribution would be found on Appellant's cell phones. Thus, the officers had probable cause to search the cell phones.

Appellant also argues that the search of his cell phone was overbroad. Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part, that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause..." Pa. Const. Art. I, § 8. We also look to the principles set forth in *Commonwealth v. Orie*, 88 A.3d 983, 996-97 (Pa. Super. 2014).[10]

> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough

---

[10] Appellant relied on *Orie* in his 2nd Pre-Trial Motion filed April 19, 2018, pages 7-8.

8

and a warrant that is overbroad. These are two separate, though related, issues.... A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation .... An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

....

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be ...." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible... Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not specific as was reasonably possible.

*Orie*, 88 A.3d at 1002-03 (citations omitted). In Orie, the Pennsylvania Superior Court found that a warrant to search the defendant's flash drive was overbroad where it sought "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format." *Id* at 1008. The Court stressed that there was no limitation to account for non-criminal use of the flash drive. *Id.*

Here, unlike in *Orie*, the warrant to search Appellant's cell phones sought evidence regarding information for the ongoing distribution of narcotics and information regarding drug transactions/sales. Here, evidence of narcotics distribution would not be limited to a distinct period of time, a limited number of people, or a particular form of digital file. As such, the breadth of the search warrant was necessary and reasonable due to the digital storage capacity of the electronic device to be searched at that time. Thus, under the circumstances of this particular case, this Court cannot find that the supplemental search warrant was constitutionally overbroad.

9

Appellant also avers that the phone was searched prior to obtaining a search warrant, constituting a violation of the United States and Pennsylvania Constitutions. Detective Ishman testified that after he received the warrant, he might have searched the cell phones prior to giving it to an analyst to "dump." Transcript of Proceedings, Suppression Hearing, May 3, 2018, page 18. However, during arguments at the Suppression Hearing, Appellant's counsel contends that several text messages were opened and read after the Defendant was taken into custody. *Id.* at 25. We fail to see how the Appellant was prejudiced by this.[11]

Furthermore, this evidence would be permissible under the inevitable discovery doctrine. The inevitable discovery doctrine provides that evidence which would have been discovered is sufficiently purged of the original illegality to allow admission of the evidence. *Commonwealth v. Bailey,* 986 A.2d 860, 862 (Pa. super. 2000). Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. *Id.* As such, despite a potentially illegal initial search, the text messages sent to the phone after the Appellant was in custody would have been discovered once the police had obtained their search warrant for the phone.

3.     <u>Introduction of Text Messages</u>

Appellant alleges that this Court erred in denying Appellant's objection to the introduction of text messages found on Appellant's cell phone in violation of the Appellant's confrontation rights under the United States and Pennsylvania Constitutions. Pursuant to Pa.R.E. 901(a), to satisfy the requirement of authentication or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable

---

[11] This Court is not sure whether the text messages that the Appellant is now claiming that the officers looked at prior to the warrant being issued were used a trial.

10

person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). *See* Pa.R.E. 901(b)(4).

In *Commonwealth v. Koch*,[12] our Superior Court had the opportunity to discuss whether cell phone text messages were properly authenticated. In *Koch*, text messages were retrieved from the defendant's cell phone, the content of which indicated drug sale activity. *Koch*, 39 A.3d at 1000. At trial, a detective testified that he had transcribed the text messages and identifying information from the cellular phone belonging to the defendant. *Id.* However, the detective could not confirm that the defendant was the author of the text messages, and that it was apparent that the defendant did not write some of the messages. *Id.* at 1003. The *Koch* Court concluded that "[i]mplicit in these decisions is the realization that e-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally. *Koch*, 39 A.3d at 1004 (citations omitted). Additionally, the *Koch* Court reasoned that "electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated." *Id.* at 1003. Accordingly, the *Koch* Court ruled "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Id.* at 1005.

With the *Koch* principles in mind, we turn to the instant matter. Here, there was a stipulation that a Samsung Galaxy cell phone ending in 9782 belonged to the Defendant. N.T. at 106. The Commonwealth introduced the phone records of the Samsung Galaxy as Commonwealth's Exhibit 6. Detective Ishman testified to the several messages coming into Defendant's phone and with either texts or calls leaving the phone. *See generally* N.T. at 107-114.

---

[12] 39 A.2d 996, 1005 (Pa. Super. 2011), *affirmed by an equally divided court*, 630 Pa. 374, 106 A.3d 705 (2014). *See also Commonwealth v. Mangel*, 181 A.3d 1154 (Pa. Super. 2018) (discussing *Koch* and its application).

11

Included in one of these is a message "Duron, will you please let me get five pills until I get my rent rebate check next week." Page 1823, Line 12613. This was sent from "Dad". N.T. at 111. Another message was sent from Dad to the Samsung Galaxy. Line 12615. And a short time after that, a call was made from the Samsung Galaxy to Dad. Line 12617. Here, there is a text message indicating that the initial message was sent to Duron.

Additionally, and more importantly, the Commonwealth introduced the testimony of Ariele Morrison. Ms. Morrison has two kids with the Defendant and started dating him in 1998. N.T. at 134. Ms. Morrison also testified to her phone number (ending in 4420). N.T. at 135. Additionally, the Defendant sometimes called Ms. Morrison "Boobie Cat". N.T. at 136. Next, the Commonwealth went through the phone records and matched all the calls ending in 4420 to those on the phone records of the Defendant's phone. N.T. at 137-140. The phone record also showed outgoing and incoming calls from Ms. Morrison to Defendant's phone (around the same time frame of the earlier text messages that were introduced into evidence). Ms. Morrison also testified that she always communicated with the Defendant using that phone and that she never communicated with anyone else using the Defendant's phone. N.T. at 138. Thus, through Ms. Morrison, the Commonwealth was able to establish and properly authenticate that the Defendant was using the phone around the same time as the texts that were previously introduced indicating drug sales.[13] Because Ms. Morrison testified that 1) she previously dated the Defendant, 2) knew his phone number, 3) always communicated with the Defendant using the number ending in 9782, and 4) that she never communicated with anyone else using that cell phone, the texts were properly authenticated and admitted. Accordingly, this issue is without merit.

---

[13] Had the Commonwealth merely introduced the testimony of the Detective alone, it would not have been enough to properly authenticate the text messages.

4. Expert Testimony

Appellant alleges that this Court erred in denying his objection to certain expert testimony proffered by the Commonwealth in regards to the testimony of Detective John Goshert. Detective Goshert gave an opinion, based on a hypothetical of the facts of this case, that Appellant possessed the drugs in question with the intent to deliver and not for personal use. In essence, Appellant contends that because the Detective, who was qualified as an expert, based his opinion on all of the facts of the case, he was unable to render an opinion based on those facts.[14]

Our Superior Court has held that "expert testimony is important in drug cases where the other evidence may not conclusively establish that the drugs were intended for distribution." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1236 (Pa. 2007) (internal citations omitted). "Such testimony is admissible to aid in determining whether the facts surrounding the possession of controlled substance are consistent with intent to deliver." *Id.* at 1237. This Court fails to see how an expert who is given the facts of the case and who renders an opinion based off of those facts violates Pa.R.E. 702. Moreover, Pa.R.E. 703 provides that "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." There is no such language that provides that an expert may only render an opinion based on partial testimony or only on some of the facts of the case. Here, the expert was given a hypothetical of the facts of the case and rendered an expert opinion. Accordingly, this issue is without merit.

5. Third-Party Guilt

Appellant's final allegation of error is that he should have been allowed to introduce evidence that Lawrence Johnson, the driver of the vehicle, was convicted in 2004 of the offense of

---

[14] Instead, Appellant contends that to be permissible expert testimony, the expert can only rely on a "limited group of factors, i.e., quantity of drugs, amount of money at scene, paraphernalia at scene, and type of packaging."

13

possession with intent to deliver crack cocaine. We disagree. We keep in mind the principles set forth by our Superior Court in *Commonwealth v. Bergen*, 142 A.3d 847 (2016):

> The defense may introduce evidence that "someone else committed a crime that bears a highly detailed similarity to the crime with which a defendant is charged." *Commonwealth v. Patterson*, 625 Pa. 104, 131, 91 A.3d 55, 72 (Pa. 2014) (citation omitted). Such evidence is admissible when the lapse of time between the commission of the two crimes and the resemblance of the methodology of the two crimes establish its relevance and probative value. *Commonwealth v. Palagonia*, 686 A.2d 1212, 1216 (Pa.Super.2005). "Thus, even if the time lapse between commission of the crimes is brief ... the evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a signature or the handiwork of the same individual." *Id.* (citations and quotation marks omitted.
>
> *Bergen*, 142 A.3d at 850.

This Court also reviewed *Commonwealth v. Thompson*, 779 A.2d 1195 (Pa. Super. 2001)(stating that "[i]t is the pattern of cocaine trafficking which is relevant in this case, not just any single isolated incident." Thompson, 779 A.2d at 1207 n.4). Here, Appellant seeks to introduce the prior record of the driver of the vehicle for a single conviction for a drug offense in 2004.[15] There was no evidence to suggest that this crime was distinguishable or so unusual to be the handiwork of one individual. This is a single conviction from 14 or 15 years prior to the incident at hand and would have had little probative value. Accordingly, the facts at hand closely resemble the facts in *Bergen* as opposed to the facts in *Thompson*. Thus, this issue is without merit.[16]

For the foregoing reason, it is believed that Appellant's claims of error are without merit.

---

[15] Defendant argues that because Mr. Johnson received a 115 month sentence for a first time PWI that a significant amount of drugs were involved, similar to the instant case. N.T. at 22.

[16] Assuming that Mr. Johnson's criminal history should have been introduced, it does not automatically lead to the conclusion that Appellant lacked possession of the contraband. Our Supreme Court has recognized that one or more individuals may be deemed to have constructive possession of contraband where the item is in an area of joint control and equal access. *Commonwealth v. Johnson*, 611 Pa. 381, 407, 26 A.3d 1078, 1094 (2011).

14

resemble the facts in *Bergen* as opposed to the facts in *Thompson*. Thus, this issue is without merit.[16]

For the foregoing reason, it is believed that Appellant's claims of error are without merit.

BY THE COURT:

Richard A. Lewis,   President Judge

**MEMORANDUM DATE:** January 25, 2019

Distribution: 1-25-19 @ 9:30, am
Ryan Lysaght, Esquire, District Attorney's Office (APPEAL) TO
James J. Karl, Esquire, Public Defender's Office (APPEAL) TO
Kristie Falbo, Esquire, District Attorney's Office  TO
Duron Smith, Defendant  MAIO
Court Administration – Criminal  TO
Court Reporter's Office TO
Clerk of Courts  File
FILE COPY - Chambers of the Honorable Richard A. Lewis

2019 JAN 25 AM 9:00

---

[16] Assuming that Mr. Johnson's criminal history should have been introduced, it does not automatically lead to the conclusion that Appellant lacked possession of the contraband. Our Supreme Court has recognized that one or more individuals may be deemed to have constructive possession of contraband where the item is in an area of joint control and equal access. *Commonwealth v. Johnson*, 611 Pa. 381, 407, 26 A.3d 1078, 1094 (2011).

15