J-S14024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
THOMAS ROBERT ROMESBURG :
:
Appellant : No. 669 WDA 2022

Appeal from the Judgment of Sentence Entered April 28, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001335-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: JULY 7, 2023**

Appellant, Thomas Robert Romesburg, appeals from the judgment of sentence of 90 days' house arrest and 18 months of probation, imposed following his non-jury trial conviction for one count of driving under the influence (DUI). Appellant's sole issue on appeal challenges the trial court's denial of his motion to suppress drug paraphernalia located in the center console of his vehicle. We affirm.

On October 26, 2020, shortly before 6:00 a.m., Appellant crashed his vehicle into a utility pole. An ambulance, along with Moon Township Police Department Officer Cuyler Hale and Corporal James Kazmierczak, were separately dispatched. Medical personnel arrived first. The officers observed extensive damage to Appellant's car: its rear axle, two wheels, and a large

_____

[*] Retired Senior Judge assigned to the Superior Court.

portion of its drivetrain had been severed. Officer Hale testified that the vehicle "was parked approximately 20 or 30 yards from a utility pole[.]" N.T., 3/17/22, at 8. Officer Hale told Corporal Kazmierczak to search Appellant's vehicle for Appellant's driver's license and registration, then went to speak to Appellant, who was receiving treatment in the ambulance. Appellant admitted that he had been "driving at an excessive speed and lost control." *Id.* at 10. Appellant nodded off at times and appeared to be confused.

Meanwhile, Corporal Kazmierczak had already located Appellant's license and registration, along with syringes, a plastic spoon, a Brillo pad, a piece of steel wool, and some empty stamp bags. Believing Appellant to be under the influence of drugs, Officer Hale asked Appellant to submit to field sobriety tests. Appellant had difficulty following the instructions and the tests were stopped. Appellant then admitted he had used heroin earlier that morning.

At some point during these events, officers checked Appellant's information in police databases and discovered an active arrest warrant.[1] Appellant was then arrested, both for the active warrant and for the suspected DUI offense. A tow truck was called to remove Appellant's vehicle. Corporal Kazmierczak testified that the policy of Moon Township Police Department is to tow crashed vehicles.

_____

[1] No further detail was supplied regarding the warrant.

Appellant filed a motion to suppress the drug paraphernalia as well as statements made while receiving treatment.[2] The trial court concluded that the officers illegally searched Appellant's vehicle but opined that the evidence would have been inevitably discovered during an inventory search in connection with the tow. Appellant proceeded to a stipulated non-jury trial and was convicted. He filed a timely notice of appeal and complied with the trial court's order to file a concise statement pursuant to Pa.R.A.P. 1925(b). He now raises one issue on appeal: "Did the court below err in denying Appellant's pretrial motion to suppress physical evidence, given that the warrantless inventory search of [his] car was improper, given that immobilization rather than impoundment of [his] car was called for (with immobilization being an action for which an inventory search is not permitted)?" Appellant's Brief at 3.

Our standard of review is well-settled:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Schwing*, 964 A.2d 8, 11 (Pa. Super. 2008).

---

[2] The trial court denied the motion to suppress his statements, and Appellant does not pursue that issue on appeal.

Both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"); Pa. Const. art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure[.]"). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa. Super. 2021) (citation omitted). The trial court relied on the inventory search exception to the warrant requirement. Recently, in **Commonwealth v. Thompson**, 289 A.3d 1104 (Pa. Super. 2023), this Court rejected the claim that the inventory search exception was eliminated in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020). We discussed the history of the exception as follows:

> [The inventory search exception] is rooted in **Cady v. Dombrowski**, 413 U.S. 433 … (1973), which recognized that police officers frequently perform tasks unrelated to criminal investigation.
>
> . . . .
>
> In **South Dakota v. Opperman**, 428 U.S. 364 … (1976), the United States Supreme Court announced the inventory search exception relied upon by the Commonwealth in this case and cited **Cady's** rationale. In that case, the police lawfully impounded a vehicle that was illegally parked. At the impound lot, an officer observed personal items in various parts of the car. The officer had lot personnel unlock the door and, using a standard inventory form, began recording the contents, including what was in the unlocked glove compartment. The officer found marijuana in the

- 4 -

glove compartment and Opperman was charged with possession. The ***Opperman*** Court concluded that the search was reasonable as the police "were indisputably engaged in a caretaking search of a lawfully impounded automobile." ***Id.*** at 375…. Like ***Cady***, "there [was] no suggestion whatever that this standard procedure … was a pretext concerning an investigatory police motive." ***Id.*** at 376…. Based on ***Cady*** and other cases involving searches of vehicles that were impounded or otherwise in police custody, the Court determined that these types of searches are reasonable "where the process is aimed at securing or protecting the car and its contents." ***Id.*** at 373….

*Id.* at 1108.

Citing ***Commonwealth v. Lagenella***, 83 A.3d 94 (Pa. 2013), the ***Thompson*** panel recognized that an inventory search is permissible only when "(1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." ***Id.*** at 1101 (quoting ***Lagenella***, 83 A.3d at 102).

Presently, Appellant argues that the first requirement has not been met, on the grounds that he was statutorily authorized to move his car within a reasonable time. ***See*** 75 Pa.C.S. § 3353(b)(1) (stating that an operator "shall arrange for the removal" of a disabled vehicle left unattended on private property without consent of owner); 75 Pa.C.S. § 7311.1(a)(1) (stating that vehicle remaining on property without consent of owner for more than 24 hours may authorize the removal). Appellant avers that the trial court concluded that "impoundment is automatically permitted anytime a disabled car is involved," which is inconsistent with the quoted statutes. Appellant's Brief at 11. Appellant agrees that his car could be towed notwithstanding

those statutes if it were obstructing traffic or otherwise presented a danger to public safety. Here, however, "Appellant's car sat entirely off the roadway on a grassy area[.]" *Id.* In other words, there was no need for the officers to perform any kind of "community caretaking."

Appellant argues that *Lagenella*, which held that a police officer could immobilize but not impound a vehicle, supports this position. There, an officer initiated a traffic stop and learned during the encounter that Lagenella's license was suspended. After issuing citations, the officer informed Lagenella that the car would be towed since Lagenella was not permitted to drive. Lagenella told the officer that he had a friend who could remove the vehicle, but the officer informed him that this was not permitted by his department's policy. The officer then, pursuant to that policy, inventoried the contents and discovered drugs.

Our Supreme Court held that the impoundment was unlawful and the evidence must be suppressed. As the relevant statutory authority for impoundment, the Commonwealth cited 75 Pa.C.S. § 6309.2(a)(1), which applies where the person's "operating privilege is suspended," and directs that "the law enforcement officer shall immobilize the vehicle … or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent…." The "towed and stored" language was equated to impoundment. The Court observed that, prior to a 2002 amendment, the statute used the term "impounding" instead of "towing and storage." It was "unclear why the legislature chose to amend" the language, and the Court

- 6 -

"discern[ed] no distinction between a vehicle which has been 'impounded' and one that has been 'towed and stored.'" ***Lagenella***, 83 A.3d at 100. Because Lagenella's license was suspended, the officer by statute could only immobilize the vehicle and did not have the authority to impound, unless it could be "towed and stored" for public safety reasons.

Relevant to Appellant's claim here, the ***Lagenella*** Court determined that this "public safety" condition was not met. ***Id.*** at 101. The Court declined to deem the impoundment lawful on that ground because the officer "offered no testimony indicating that [the] vehicle posed an issue of public safety." ***Id.*** In fact, the officer agreed on cross-examination that Lagenella's vehicle was not disabled or damaged. ***Id.*** Nor was there any indication that the parked vehicle impeded the flow of traffic. Finally, the Court rejected the Commonwealth's argument that an "immobilized" vehicle is in the lawful custody of the police and may always be towed due to that custodial status.

Appellant argues that we must assess "whether … immobilizing the vehicle would endanger public safety." Appellant's Brief at 20. Appellant submits that there is an absence of authority on this question in our appellate courts and asks this Court to follow ***Josey v. State***, 981 S.W.2d 831 (Tex. App. 1998), which states that impoundment is permitted under Texas law "if police place the driver of the vehicle under custodial arrest and have no other alternatives available other than impoundment to insure protection of the vehicle." ***Id.*** at 842. The ***Josey*** Court listed six non-exclusive factors to consider when determining whether an impoundment was justified. Appellant

urges this Court to do the same. He insists that "[t]he totality of the circumstances must be examined." Appellant's Brief at 24. He cites several factors that, in his view, suggest that impoundment was not necessary to protect the public safety: his vehicle was entirely off the roadway; it was not blocking a sidewalk or pedestrian walkway; and there is no indication that the vehicle was likely to catch on fire or explode due to its damage. *Id.*

The Commonwealth argues in response that the lawful authority to impound did not derive from the statute analyzed in *Lagenella*. Instead, Section 3352(c)(3) of the Vehicle Code supplies statutory authority for the impoundment in this case:

> **(c) Removal to garage or place of safety.--**Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:
>
> . . . .
>
> (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

75 Pa.C.S. § 3352(c)(3). The Commonwealth points out that the authorities arrested Appellant for the DUI as well as an outstanding arrest warrant. The Commonwealth argues that public safety was implicated in any event, as the vehicle was completely inoperable.

We agree with the Commonwealth that the tow was statutorily authorized and decline to consider whether the tow was authorized for public

safety.[3]  Beginning with Appellant's argument that this Court should adopt a "no other alternatives available" test, Appellant does not specify whether this test should apply only if the tow was for public safety reasons, or whether it applies even if the tow were authorized under Section 3352(c)(3).[4]  In addition, we note that the Texas decision cited by Appellant in support of the "no other alternatives available" test applied a long line of cases holding that the Texas Constitution offers greater protection than the Fourth Amendment. *See Gords v. State*, 824 S.W.2d 785, 787 (Tex. App. 1992) ("In … an inventory search case, the Court of Criminal Appeals expressly held that the Texas courts, when analyzing and interpreting article I, section 9 of the Texas Constitution, will not be bound by United States Supreme Court cases addressing comparable fourth amendment issues.").  Appellant does not cite any authority for the proposition that Article I, Section 8 of the Pennsylvania Constitution offers greater protection than the Fourth Amendment in this situation.  *See Lagenella,* 83 A.3d at 99 n.3 ("[F]or purposes of this appeal,

_____

[3] The Commonwealth, like Appellant, appears to assume that the "lawful impoundment" component of *Opperman* means that the impoundment must be authorized by statute.  We accept that conclusion for purposes of this appeal.  However, we note that other courts have stated that a lawful seizure of a vehicle via impoundment can be justified by either statutory authorization or by the circumstances.  For example, in *State v. Hygh*, 711 P.2d 264 (Utah 1985), the Supreme Court of Utah explained that "lawful impoundment … can be had either through explicit statutory authorization or by the circumstances surrounding the initial stop." *Id.* at 268 (footnote omitted).  The latter ability to impound "under the circumstances" appears to employ a totality-of-the-circumstances type test.

[4] Appellant does not cite that statute and did not file a reply brief.

we find the Fourth Amendment and Article I, Section 8 to be coextensive.").

We recognize that, in ***Thompson, supra***, this Court acknowledged that

aspects of the ***Alexander*** decision may support some limitations on the

inventory search exception under our charter, but we ultimately declined to

address such arguments:

> … ***Alexander*** may well support some limitations on the inventory search exception, as expressed by the dissenting Justices in ***Opperman***[, 428 U.S.] at 392 … (Marshall, J. dissenting) (arguing that, at minimum, an inventory search cannot take place if the car owner declines; "It is at least clear that any owner might prohibit the police from executing a protective search of his impounded car, since by hypothesis the inventory is conducted for the owner's benefit."); ***see also Colorado v. Bertine***, 479 U.S. 367 … (1987) (Marshall, J., dissenting) (noting that in ***Opperman*** the vehicle's owner was not present when the vehicle was towed; "In this case, however, the owner was present to make other arrangements for the safekeeping of his belongings[.]") (quotation marks and citation omitted).  The ***Alexander*** Court's rejection of the United States Supreme Court's views on the privacy interests involved in an automobile may well support some limitations on the inventory search doctrine.  ***See Bertine***, 479 U.S. at 386 … ("Not only are the government's interests weaker here than in ***Opperman*** … but respondent's privacy interest is greater.") (Marshall, J., dissenting).   Here, however, [the a]ppellant argues that ***Alexander*** simply eliminated the inventory search exception in total.  We thus have no occasion to address these types of arguments.

***Thompson***, 289 A.3d at 1110–11.[5]

_____

[5] The citation to ***Bertine*** warrants some brief additional discussion.  Bertine had been arrested for DUI and his vehicle was towed pursuant to standard procedure.  As one basis for deeming the inventory search unconstitutional, the Supreme Court of Colorado "expressed the view that the search in this case was unreasonable because Bertine's van was towed to a secure, lighted facility and because Bertine himself could have been offered the opportunity

Thus, Appellant's argument that we should follow Texas law amounts to an argument that this Court should read Article I, Section 8 more extensively than the Fourth Amendment. However, Appellant did not present such an argument below. Consequently, we decline to conclude that the officers were required to determine whether more reasonable alternatives existed in lieu of impoundment that was authorized by statute. **See Commonwealth v. Bishop**, 217 A.3d 833, 841 (Pa. 2019) (holding that claim arguing for departure under Pennsylvania Constitution was waived for failing to develop it at trial court level).

Having rejected the "no other alternative" argument, we agree with the Commonwealth that Section 3352(c)(3) establishes a basis for the tow. As a result, the evidence would have been inevitably discovered due to the departmental policy to perform an inventory search pursuant to a tow. **See Commonwealth v. Bailey**, 986 A.2d 860, 863 (Pa. Super. 2009) (citing Section 3352(c)(3) as basis for tow; "Because the police … conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places such as the center console, we must agree

---

to make other arrangements for the safekeeping of his property." **Bertine**, 479 U.S. at 373. The Court disagreed, because the reasonableness of governmental activity "does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." **Id.** at 374 (citation omitted). The Texas Court of Appeals decision in **Gords** declined to follow **Bertine**. "**Bertine** is not binding on this Court on State constitutional issue; it is only permissive authority." **Gords**, 824 S.W.2d at 787.

that the gun would have inevitably been discovered absent police error or

misconduct.").[6]    To the extent that Appellant argues police officers are

---

[6] The following discussion occurred at the suppression hearing concerning Moon Township's towing policy:

> Q. When towing a car, do you have any standard procedures on how you handle that car before it's taken by the tow company?
>
> [APPELLANT]: Objection.  Your Honor, best evidence for any tow policy, would be a copy of the actual tow policy, not the witness's recollection.
>
> THE COURT: He can ask if there is one.  Maybe there is not one.
>
> Q. Is there a tow policy?
>
> A. We do have a policy.  Again it depends on whether we're impounding the car.
>
> [APPELLANT]: Your Honor, I would just object to this testimony and ask directly, the best evidence for the tow policy itself would be the actual tow policy.
>
> THE COURT: Do you have a tow policy?
>
> THE WITNESS: Yes and no.  It depends on the policy.  For crashes[,] it's a little different than if we're impounding the vehicle for law enforcement purposes.  This was simple: There's been a crash, tow the vehicle to get it to safety.
>
> THE COURT: So is there a policy for that?
>
> THE WITNESS: Specifically, as far -- not a specific policy.
>
> THE COURT: Is there a practice?
>
> THE WITNESS: Yes.  But the practice is, we call the tow of the month if the person doesn't have a specific tow they would want to use.  And in this specific instance, we may look through the car to make sure that there's nothing that could hurt the tow-truck driver.

required to pursue other alternatives even under that statute in cases where the vehicle does not otherwise pose a danger to public safety, we conclude that this argument implicates whether Article I, Section 8 should be read to provide more protection than the Fourth Amendment. Appellant did not raise that argument below and, thus, we find that it is waived. **Bishop**, 217 A.3d at 841.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2023

---

N.T., 3/17/22, at 30-31.

We agree with Appellant's comments at argument that a written policy is preferred, as the Commonwealth must establish the existence of a towing policy to justify an inventory search. In **Bailey**, President Judge Emeritus McEwen filed a concurring opinion noting that the Commonwealth did not produce a written policy. He joined the opinion, however, because "the arresting officer testified, without contradiction or rebuttal, that [the] car 'would have been towed' and 'an inventory search[']" would have occurred. **Bailey**, 986 A.2d at 863-64 (McEwen, P.J.E., concurring). In the case *sub judice,* the officer referenced the existence of a policy, while also stating there is not a specific policy, and also referenced "practices" for certain scenarios (presumably those not covered by the policy). Nevertheless, as in **Bailey**, the testimony that the car would have been towed and inventoried as a matter of policy was not contradicted.